## SUPREME COURT.

WOODRUFF, respondent, agt. BUSH AND OTHERS, appellants.

Where plaintiff and defendant entered into a stipulation to postpone the sale of mortgaged premises upon a decree of foreclosure and sale, and further stipulated that in case a sale of said premises should be made by the sheriff, the same should be sold in parcels such as should be designated by the defendant, and in case of his failure to designate before the day of sale, the plaintiff might designate the parcels himself. *Held,* that the plaintiff was not bound by such stipulation to have premises sold in accordance with a map and designation submitted by defendant which did not include all the mortgaged premises, and which included other lands with the mortgaged premises, and which map had lots marked upon it, parts of which were, and and other parts of which were not included in the mortgage, and the parts of mortgaged premises so included in some of the mapped lots were triangular or corner pieces, and of very little value, and some of them irregularly shaped by being intersected with other lands.

*Held,* also, that the plaintiff was, in such case, at liberty to designate the parcels himself.

Where mortgaged premises are sold upon a decree of foreclosure and sale, and a parcel is sold by the sheriff and bid off by the plaintiff he is not at liberty to refuse to consummate such sale or revoke his bid, and direct the sheriff to resell the same parcel with other lands; and if the sheriff in pursuance of such direction does resell the same, the sale will be set aside as irregular.

*Niagara General Term, February* 1853. *Present, Justices* MULLETT, BOWEN and TAGGART. The plaintiff obtained a decree of foreclosure and sale of mortgaged premises, upon a mortgage executed by the defendant Bush, upon which decree there remained unpaid about the sum of three thousand five hundred dollars. A part of the premises had been sold and the proceeds of the sales applied on the decree previous to entering into the stipulation mentioned below.

On the 21st of November 1848, the plaintiff and defendant Bush, entered into a stipulation by which, among other things, it was provided that the sale of the mortgaged premises should be postponed until the first day of March thereafter, and in case of a sale of said premises by the sheriff, the same should be sold in parcels such as should be designated by said defendant, and in case the defendant should not designate before the day of sale, the plaintiff might designate the parcels himself.

Woodruff agt. Bush and others.

The mortgaged premises were sold on the sixth day of April 1852. Previous to the day of sale, the defendant Bush caused to be prepared a map dividing the mortgaged premises into lots, and delivered such map to the sheriff and informed him in what manner he wanted to have the premises sold.

On the part of the plaintiff it was shown that the map did not include all of the mortgaged premises, and did include other lands with the mortgaged premises, and that the other lands were laid off with parts and parcels of the mortgaged premises, and that the parts of the mortgaged premises so laid off with lands not included in the mortgage were of very little value, separated from the residue of the mortgaged premises.

The plaintiff refused to have the lands sold in accordance with the designation made by said defendant, but directed the sheriff as to the parcels to be sold.

The first parcel sold contained all the land on the south side of the road, having thereon a mill, and it was bid off by the plaintiff for twenty-one hundred and twenty-five dollars. The sheriff then offered for sale the tail race of said mill, and bids were made for it until eighty-five dollars had been bidden therefor. The plaintiff then refused to abide by the bid made by him for the land on the south side of the road, including the mill, and directed the sheriff to offer the same premises so bid off by him, together with the tail race and head race of said mill, to be offered for sale. The sheriff obeyed such direction, and the same were offered for sale and bid off by the plaintiff for the sum of two thousand two hundred and ten dollars.

After the sale of the first parcel above mentioned, and before the plaintiff gave the direction to the sheriff to put the same premises up together with the tail race and head race, some of the persons present at such sale, and one of the bidders, had left the place of sale.

The defendant Bush moved at special term to vacate and set aside the sale of the mortgaged premises, on the ground, first, that such sale was not made in conformity with the stipulation; and second, on account of vacating by the plaintiff and sheriff of the first sale and reselling the same property with the tail race and head race of said mill.

Such motion was denied and the defendant Bush appealed from the order denying the same, to the general term.

Taggart, Justice.—I think the learned justice was right in refusing to grant the motion to set aside the sale on the ground that the property was not sold in conformity with the map and designation of the parcels furnished by the defendant. The stipulation must have a reasonable construction. The defendant had no right to furnish a map and direct the sale to be made in conformity thereto, unless such map designated and marked out the land in such manner that the same could be sold without prejudice to the plaintiff's interest. He was bound too, to include all of the mortgaged premises within the compass of his map or within the designation of the property to be sold, and without including any other lands with the mortgaged premises. This he has not done. His own affidavit concedes that about four acres of the mortgaged premises were not included in his map, and were not designated to be sold. The plaintiff's affidavits disclose that some of the lots designated on the map embraced lands included in the mortgage united with lands not included therein. In some instances the greater portion of said lots were made up of other lands, and, in some instances, including but a mere triangle or corner of the lands embraced in the decree, and so located as to be of very little value, and some of the pieces were irregularly shaped by being intersected with said other lands.

The plaintiff was not bound to have the sale made according to the designation upon such map, and was clearly right in rejecting the same, and designating the parcels to be sold himself.

It is true the affidavits are contradictory as to the character of the map in question, but for the purposes of this motion we must assume that the plaintiff's affidavits are correct. The defendant was bound to make out his case; the burden of proof is upon him, and if the counter affidavits furnish a full answer to the case made by him, he must fail in his motion; besides it was competent for the defendant to have made his map, or a copy of it, part of his moving papers, and we could then have seen whether it was such a map as the plaintiff was bound to regard in making the sale.

Woodruff agt. Bush and others.

The second point on which the defendant relies to sustain his application, I think is tenable. The plaintiff directs the sale to commence, designates the parcel to be sold; bids are made upon it by different individuals, and it is finally struck off to him. He is then the purchaser, and substantially the owner of the land. Another parcel, also designated by the plaintiff, is offered for sale; bids are made upon it. The plaintiff then refuses to carry out his previous bid, cancels his purchase without the consent of the defendant, and orders the same land to be resold with other land. This is done, too, after some of the bidders have left the place of sale. It is said that there was a mistake and the court would have granted relief. I concede this, but this court would not have set aside the sale on motion of the plaintiff, without notice to the defendant; and what the court will not order to be done without notice to the defendant, it surely will not permit the plaintiff to do himself.

By allowing this sale to stand, a precedent will be established that may lead to great abuses. The plaintiff and sheriff may, under the sanction of this court, combine to deprive the defendant of his rights without restraint; cases may occur where the sale had been completed, and the decree satisfied, leaving the defendant some valuable property, besides the amount of the decree; after the defendant leaves the place of sale and bidders have gone home, the plaintiff claims that he has been deceived in the purchase of the property; that lands he supposed he had purchased were not included within the boundaries, or some other mistake has occurred, no matter of what character, he declines taking his deed and completing the purchase, orders the sheriff to resell. The sheriff complies, and the reserved property is first sold.

It will be answered that in the case supposed the defendant has his remedy against the plaintiff, but that remedy is precarious, and the defendant has a right to have his property sold according to law; and when once sold the plaintiff has no right of his own mere motion to vacate such sale.

It is said in this case, that the defendant has not been injured by the resale, but has realized the full value of his property. That is not, in my opinion, material. There is a principle of

public policy involved in this case that forbids the toleration of such a proceeding.

The order appealed from must be reversed with costs, and the order to set aside the sale granted with costs.